**Randolph MILLER, Appellant,**

v.

**WORLD INVESTIGATION & SECURITY COMPANY, Appellee.**

**No. 2-92-082-CV.**

Court of Appeals of Texas, Fort Worth.

June 16, 1993.

Rehearing Overruled July 14, 1993.

David G. Hart, Dallas, for appellant.

John Hill Cayce, Jr., Shannon, Gracey, Ratliff & Miller, L.L.P., Fort Worth, for appellee.

Before HILL, C.J., and FARRIS and DAY, JJ.

**OPINION**

DAY, Justice.

This is an appeal from a personal injury suit. The trial court rendered judgment for Randolph Miller, the plaintiff below, in an amount substantially less than the jury's verdict.

We reverse.

The facts pertinent to a better understanding of this opinion are as follows:

1. June 4, 1985. A security guard employed by World Investigation & Security Company (World), a Texas corporation, accidentally shot Miller in the hand.

2. October 3, 1986. Clifford Lee Pope and Freda S. Pope, d/b/a World Investigation & Security, Inc. (the Popes), filed for personal protection from creditors under Chapter 13 of the Bankruptcy Code.

3. December 19, 1986. Miller sued World for alleged negligence and gross

---

**11.** *Keetch v. Kroger Co.,* 845 S.W.2d 262, 265 (Tex.1992) (citation omitted).

**12.** *H.E.B.,* 845 S.W.2d at 260.

negligence arising out of the shooting incident.

4. January 23, 1987. World answered the lawsuit.

5. August 5, 1987. *World* (not the Popes) filed a notice of bankruptcy with the trial court. The notice stated that World had petitioned for relief under Chapter 7 of the Bankruptcy Code and asserted that all matters pertaining to World were thereby stayed pursuant to section 362 of the Bankruptcy Code.

6. July 27, 1988. Miller filed a motion for relief from automatic stay with the bankruptcy court.

7. January 30, 1989. The bankruptcy judge signed an order lifting the automatic stay. The order limited the lift of the stay to the extent of World's and Clifford Pope's liability insurance coverage.

8. December 21, 1989. The Popes' bankruptcy was involuntarily dismissed.

9. February 10, 1992. A jury trial began in Miller's personal injury suit.

10. February 14, 1992. The jury reached a verdict and was discharged. The jury found Miller and World's employee each 30% negligent and World 40% negligent. The jury found Miller had suffered $134,000 in past and future damages. The jury also found World was grossly negligent and assessed $75,000 in punitive damages against World.

11. February 27, 1992. The trial court rendered judgment for Miller for $50,000, the amount of World's liability insurance coverage.

12. March 5, 1992. Miller filed a motion to modify the judgment.

13. April 10, 1992. The trial court granted Miller's motion to modify and rendered judgment for Miller for $92,866.44. This judgment reflects the $50,000 coverage limit of World's liability insurance policy, plus prejudgment inter-est of $42,866.44. Miller filed his appeal bond.

14. April 23, 1992—June 12, 1992. Miller and World filed various motions, which the trial court heard on June 12, 1992. The court formally denied the motions on July 9, 1992.

Miller raises four points of error on appeal. In points one and two, Miller complains the trial court improperly limited the judgment amount to the extent of World's liability insurance coverage because there was no evidence World was ever a party to a bankruptcy proceeding or that World's debts were discharged. By his third point, Miller asserts the automatic stay was vacated when the Popes' bankruptcy was dismissed, obviating the need for the order lifting stay that limited his recovery. In his fourth point of error, Miller contends World is estopped from benefiting from its misrepresentation to Miller that World had filed a Chapter 7 proceeding.

In its sole cross-point, World complains the trial court improperly rendered judgment against World for prejudgment interest in the amount of $42,866.44.

We will consider Miller's third point first. In his original brief on appeal, Miller argued that dismissal of the Popes' Chapter 13 bankruptcy proceeding operated to vacate the order lifting the automatic stay, pursuant to 11 U.S.C.S. § 349(b) (Law.Co-op.1985).[1] In his supplemental brief, however, Miller agrees with World that section 349(b) affects only the specific actions listed therein. Since 11 U.S.C.S. § 362 (Law. Co-op.1985 & Supp.1993) (the automatic stay provision) is not mentioned in section 349(b), Miller concedes the *order* lifting stay was not vacated by the dismissal.

Nonetheless, Miller asserts dismissal of the Popes' bankruptcy vacated the *automatic stay* itself. Accordingly, Miller urges the trial court erroneously limited

---

1. 11 U.S.C.S. § 349(b) provides, in pertinent part:

Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

. . . .

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

the jury's verdict in his favor. Conversely, World contends the dismissal had no effect on the bankruptcy court's order lifting stay and argues that the order, with its limiting provisions, remains in full force and effect. Based upon our review of the scant case law on this issue and the record itself, we believe Miller's view is the correct one.

Miller and World each rely on *Norton v. Hoxie State Bank*, 61 B.R. 258 (D.Kan. 1986) as support for their respective positions. In *Hoxie* the debtors had originally filed a Chapter 11 proceeding. At some point during that proceeding, the bankruptcy court lifted the automatic stay as it pertained to certain property subject to a lien held by Hoxie State Bank. 61 B.R. at 259–60. The bank, acting in reliance upon the order lifting stay, took possession of and sold its collateral. *Id.* at 260.

While the Chapter 11 reorganization was still pending, the debtors filed a petition under Chapter 13 of the Bankruptcy Code and moved to dismiss the Chapter 11 proceeding. *Id.* at 260–61. The bankruptcy court granted the motion to dismiss but stated that its granting of that motion was "subject to the express condition that lifts or modifications of the automatic stay heretofore granted to creditors herein shall remain in full force and effect in any other bankruptcy proceedings filed by debtors." *Id.* at 261.

The debtors argued that section 349(b)(2) & (3) operated after dismissal of the Chapter 11 proceeding to vacate the bankruptcy court's order lifting stay. *Id.* at 260. The federal district court disagreed, stating:

Section 349(b)(2) affects only the specific actions delineated in that subsection and does not include an order granting relief from an automatic stay pursuant to 11 U.S.C. § 362. Indeed, the inclusion of such an order would offend logic and common sense, as *once a bankruptcy proceeding is dismissed the automatic stay provision is of necessity corre-*spondingly *vacated.* See *11 U.S.C. § 362(c)(2)(B). A dismissal of a bankruptcy case acts, in effect, as a grant of relief from any automatic stay previously in effect.*

*Id.* (emphasis supplied).

We read this language in *Hoxie* to mean that section 349 has no effect on orders pursuant to section 362 simply because orders lifting stay are unnecessary once dismissal of the bankruptcy has automatically vacated the stay. *See* § 362(c).[2] When a debtor's case is dismissed, he can no longer claim the protections afforded by the bankruptcy laws. In this context, an order *limiting* the lifting of the automatic stay would also offend logic and common sense.

The one exception to this rule occurs where the bankruptcy court expressly provides that the order lifting stay will remain in effect after dismissal and during the pendency of a subsequent bankruptcy proceeding in order to protect a creditor who has acted in reliance upon the order lifting stay. This exception originated in the *Hoxie* decision, where the bankruptcy court expressly provided that, after dismissal of the debtors' Chapter 11 case, the order lifting stay would remain in effect in any other bankruptcy proceeding filed by the debtors.

*Hoxie* is distinguishable from the instant case on at least three points. First, the bankruptcy court in this case made no provision for the order lifting stay to remain in effect after dismissal of the Popes' bankruptcy. If the Popes had wished that order to remain in effect, they should have lodged their request with the bankruptcy court.

Second, the Popes filed no subsequent bankruptcy proceedings, thereby eliminating the need for continuation of an order lifting stay.

---

**2.** 11 U.S.C.S. § 362(c)(2) provides, in pertinent part:

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) *the time the case is dismissed;* or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, or 13 of this title, the time a discharge is granted or denied.

*Id.* (emphasis supplied).

Lastly, the order lifting stay in *Hoxie* was continued to benefit creditors who had acted in reliance upon it during the pendency of the original bankruptcy case. In this instance, Miller never acted in reliance upon the order lifting stay, and World sought to rely on it only after dismissal of the Popes' bankruptcy. In fact, the trial of Miller's personal injury suit did not begin until February 10, 1992, approximately six weeks after the Popes' bankruptcy was involuntarily dismissed.

Since the bankruptcy court did not specify that the order lifting stay would remain in effect after dismissal of the Popes' bankruptcy, that order had no effect on Miller's personal injury suit. Thus, the trial court erred in applying the limitations of the order lifting stay to the jury's verdict.

In addition, we believe our decision in this case is grounded in sound public policy.

The record reveals that World was never a party to the Popes' bankruptcy. Yet World filed a notice of bankruptcy in the trial court, claiming to be a debtor in a Chapter 7 proceeding and invoking the automatic stay provision of section 362. By filing this document, World held itself out as a bankrupt to the trial court. World takes the position that the number "7" was a typographical error and should have been a "13." Even assuming the truth of this assertion, we wholly fail to grasp how World's representation, in the notice of bankruptcy, that World was itself a debtor, was likewise a mere oversight.

Additionally, World held itself out to the bankruptcy court as a debtor—a sole proprietorship owned by the Popes—in the Popes' Chapter 13 proceeding, even though the record shows otherwise. The Chapter 13 petition lists the Popes as "d/b/a World Investigation & Security, Inc." Yet World represented itself to Miller as a corporation and required Miller to serve process on World as a corporation rather than as a sole proprietorship.

Finally, World was in the best position to know whether it had sought bankruptcy protection. World has cited us to no refer-ences in the record showing that it filed bankruptcy or was ever involuntarily before the bankruptcy court as a debtor. This being the case, we can think of no reason why World should claim the benefit of the bankruptcy laws or any order entered thereunder.

Because we find the bankruptcy court's order lifting stay did not survive the pendency of the Popes' Chapter 13 bankruptcy proceeding, we sustain Miller's third point of error. In light of our holding with regard to this point of error, we deem it unnecessary to consider Miller's remaining points of error or World's cross-point.

We reverse the trial court's judgment and render judgment for Miller in the amount of $93,800 [3] in actual damages and $75,000 in punitive damages. We remand this cause to the trial court for recalculation of prejudgment interest on the actual damages.

---

**3.** $93,800 is 70% of the $134,000 the jury found    Miller had suffered in actual damages.